### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Mary Carr, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>BG Retail, LLC and Caleres, Inc.,<br><br>　　　　　　　　Defendants. | Case No.: 1:24-cv-12387-AK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mary Carr ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendants BG Retail, LLC and Caleres, Inc. (collectively, "Defendants" or "Famous Footwear").

### NATURE OF THE ACTION

1.　　　This is a class action suit brought against Defendants BG Retail, LLC and Caleres, Inc. for encroaching upon Plaintiff's and other similarly situated individuals' privacy rights under Mass. Gen. Laws ch. 93, § 105 (the "Massachusetts Consumer Privacy in Commercial Transactions Act" or "CPICTA").

2.　　　The CPICTA, at § 105(a), reads:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

> The provisions of this section shall apply to all credit card transactions; provided, however, that the provisions of this section shall not be construed to prevent a person, firm, partnership, corporation or other business entity from requesting information is necessary for shipping, delivery or

1

installation of purchased merchandise or services or for a warranty when such information is provided voluntarily by a credit card holder.

3.      To summarize, the CPICTA prohibits companies such as Defendants from requiring consumers to providing their personal information (*e.g.*, address, telephone number) when making a credit card transaction, unless such information is necessary for the transaction (*e.g.*, shipping or delivery).

4.      Per the Supreme Judicial Court of Massachusetts, this provision's "purpose was to safeguard consumer privacy and more particularly to protect consumers using credit cards from becoming the recipients of unwanted commercial solicitations from merchants with access to their identifying information." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 498 (2013).

5.      Nonetheless, and in violation of the CPICTA, Famous Footwear requires each online shopper using its website's credit card transaction form to write personal identification information not required by credit card issuers—their email address. Famous Fotwear also writes and/or causes this information to be written on its website's credit card transaction form.

6.      Defendants then use the collected email addresses to send unwanted commercial solicitations—spam marketing emails ("Spam")—to said consumers. In fact, even if consumers chose not to click an email consent checkbox, Defendants still sent shoppers marketing emails.

7.      Mass. Gen. Laws ch. 93, § 105(d) states: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A."

8.      Plaintiff therefore brings this action individually and on behalf of a class of all other similarly situated consumers to recover damages and restitution under the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A ("Chapter 93A").

## PARTIES

9.      Plaintiff Mary Carr is a citizen of Massachusetts who resides in Attleboro,

Massachusetts.  In or around September 2023, Ms. Carr purchased a pair of boots from Famous Footwear, paid by credit card, and checked out via the Famous Footwear website's credit card transaction form (located at www.famousfootwear.com).  As part of this process, Ms. Carr was required by Famous Footwear to write personal identification information not required by credit card issuers—her email address.  Ms. Carr's email address was not a necessary part of the transaction, as it was not required for shipping, delivery, installation, or any other purpose. Shortly after completing her online Famous Footwear purchase, Ms. Carr began receiving spam marketing emails from Famous Footwear.  Ms. Carr never signed up for or otherwise consented to the receipt of this Spam.  Further, the Spam is a nuisance, Famous Footwear caused Ms. Carr to waste her time reading or otherwise addressing the Spam, and the Spam consumed valuable storage space in Ms. Carr's email mailbox.

10.     Defendant Caleres, Inc. is a New York corporation with its principal place of business at 8300 Maryland Avenue, St. Louis, Missouri 63105.  Defendant is one of the largest footwear companies in the nation, and it operates Famous Footwear retail locations throughout the Commonwealth.[1]  Defendant targets consumers whom it knows to reside in Massachusetts (based on shipping information provided during checkout) with Spam.

11.     Defendant BG Retail, LLC is a Delaware limited liability company with its principal place of business at 8300 Maryland Avenue, St. Louis, Missouri 63105.  Defendant operates the Famous Footwear website, www.famousfootwear.com, on behalf of Defendant Caleres, Inc.  Defendant targets consumers whom it knows to reside in Massachusetts (based on shipping information provided during checkout) with Spam.

---

[1] https://www.famousfootwear.com/stores

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

13.     This Court has personal jurisdiction over Defendants because Defendants operate Famous Footwear stores in the state of Massachusetts and process and ship online orders to individuals whom they know to reside in Massachusetts (based on shipping information provided during checkout).  This includes online orders for pickup at Famous Footwear's Massachusetts locations.  Further, a substantial portion of the events giving rise to this cause of action occurred here.  Plaintiff is domiciled and suffered her primary injury in this district.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events that gave rise to this cause of action occurred here.  Plaintiff resides in this District and placed Famous Footwear online orders in this District.

## FACTUAL ALLEGATIONS

15.     As industry leaders,[2] trade groups,[3] and courts[4] agree, an email address is "personal identification information[.]"  The Supreme Judicial Court of Massachusetts has held that "a zip code may well qualify as personal identification information under § 105 (a). This is so because . . . a consumer's zip code, when combined with the consumer's name, provides the

---

[2] https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII[.]").

[3] https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (the Network Advertising Initiative Code of Conduct, identifying email as PII).

[4] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

merchant with enough information to identify through publicly available databases the consumer's address or telephone number[.]" *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 499–501 (2013).

16.     In interpreting California's Song-Bervely Credit Card Act of 1974, Cal. Civ. Code § 1747, *et seq.*, the United States District Court for the Eastern District of California compared zip codes and email addresses, finding: "[A] cardholder's email address 'pertain[s] to or regards to a cardholder' in a more specific and personal way than does a ZIP code. . . . Therefore, this Court predicts that the California Supreme Court would decide that an email address constitutes 'personal identification information[.]'" *Capp v. Nordstrom, Inc.*, 2013 WL 5739102, at *6 (E.D. Cal. Oct. 22, 2013) (citations omitted).

17.     That is, just like a zip code, a consumer's email address provides merchants like Defendant with enough information to identify through publicly available databases a consumer's address or phone number.[5]  And as the United States District Court for the Eastern District of California went on to conclude: "Defendant's alleged conduct in this case—acquiring Plaintiff's email address for one reason, . . . and then using the address for another reason, to send him promotional emails . . . directly implicates the purposes of the statute[.]"  *Id.* at *7.

---

[5] Various companies claim the ability to reverse append email addresses to obtain customers' street addresses and telephone numbers.  *See, e.g.,* https://www.edq.com/email-verification/append/ ("Reverse email append service takes email addresses and matches other information you lack"); https://docs.experianaperture.io/identity-append/experian-identity-append/overview/introduction/#reverse-email-append ("Reverse email append is a service that allows you to input an email address and receive the name and address of the individual associated with that email."); https://www.listsolutions.com/our-services/ ("Reverse Email Append[:] Overlay name and address postal information to your email only database"); https://cdn2.hubspot.net/hub/68599/file-310417248-pdf/docs/towerdata_reverseemailappend.pdf ("TowerData's Reverse Email Append service can enhance your email database by adding the names and postal addresses of your customers. You'll gain the ability to market to them through direct mail"); https://dmdatabases.com/data-append/reverse-email-append/ ("What is reverse email append? If you have a database only consisting of email addresses, then we can match the email addresses against a massive cooperative database to append postal addresses, contact names, cell phone numbers, and other valuable data").

18.    When checking out from Defendants' website, www.famousfootwear.com, online shoppers who wish to maintain their privacy, like Plaintiff and other Class Members, are presented with the option to "Continue as a Guest":



19.    After making this selection, shoppers are required to enter their email address and shipping address into the Famous Footwear website's credit card transaction form, to proceed with the checkout process.  If a consumer attempts to opt out of Defendants' email collection by leaving the email field blank, they are shown an error message that declares, "Please enter your email address" and they are precluded from continuing to the next checkout stages.

## 1. Delivery

**Contact Information**

**Email Address\***
For shipping confirmation

ⓘ Please enter your email address

20.    Until recently, Defendants *appeared* to solicit consent to send future emails to shoppers (with a checkbox marked, "By entering your email, you agree to receive emails from us about new products, exclusive offers, and updates. Please see our privacy policy to learn more about how we use your information.").  But *even if consumers chose not to click this box*, Defendants still sent shoppers marketing emails.



21.     Now, the email field on www.famousfootwear.com merely states, in small, difficult-to-see font: "Please see our Privacy Policy to learn how we use your information."



22.     In fact, Defendants require shoppers to provide their email address not only when items are being shipped, but also when an item is being picked up at a local Famous Footwear retail location:



23.     There is no reason why a customer must provide their email addresses for Famous Footwear credit card transaction.  Customers furnish their shipping address for delivery, and they must provide their phone number, as well.



24.     Famous Footwear writes, cause to be written, and requires that a credit card holder write the credit card holder's email address on Famous Footwear's credit card transaction form.  In full, Defendants' credit card transaction form appears as follows:



‹ **BACK TO CART**

# FAMOUS
footwear·

### ✓ 1. Delivery                                                      EDIT

**Shipping Address**                    **Shipping Method**
First Last                              Standard
4 Jersey St                             3-5 business days
Boston, MA 02215
(123) 456-7890
example@gmail.com

## 2. Payment

**Earn a $10 welcome bonus & cash back from Rakuten!**          **Rakuten**

Simply add Rakuten to your browser, and shop like normal. Click
'claim $10 bonus' for details!

Terms & Conditions                                         **CLAIM $10 BONUS**

Powered by Rakt · Privacy Policy

**1. Before selecting a payment method**

☐   Have a Promo Code?

☐   Do you have a Gift Card?

**2. Select a payment method before moving to review**

◉   ▭  Credit Card

**Credit Card Number***

| Credit Card Number          ▭ |

VISA ▭ ▭ ▭ ▭ ▭ ▭

**Expiration Month***      **Expiration Year***      **Security Code***

| Month      ∨ |      | Year      ∨ |      |                |

**Billing Address**

✓   Same as Shipping Address

First Last
4 Jersey St
Boston, MA 02215
(123) 456-7890
example@gmail.com

**CONTINUE TO REVIEW**

### Order Summary

Subtotal                                    $116.99
Standard                                       Free
Taxes                                        $0.00

Total                                      **$116.99**
or 4 payments of **$30.25** with **ZIP** ⓘ

Style #00652

**Nike Men's Air Max LTD
3 Sneaker**
Size: 10.5
Width: Medium
Color: White/Grey/Blue

**$116.99**   $129.99
BOGO 1st pair only ⓘ

This item is excluded from
promo codes

9

25.     To test Defendants' email-related practices, Plaintiff's counsel purchased an item online from Famous Footwear with a credit card on or around December 13, 2023.  Plaintiff's counsel entered an email address but did not check the box labeled "By entering your email, you agree to receive emails from us about new products, exclusive offers, and updates. Please see our privacy policy to learn more about how we use your information."  Despite not clicking the box, Defendants then sent Plaintiff's counsel numerous emails over the following months.  While some of these emails related to a purchase, the others were solicitations.

26.     For individuals like Plaintiff and other Class Members, these commercial solicitations constitute unwanted Spam.  Plaintiff and Class Members were never given the option to not to provide their email address, and they were sent emails regardless of whether or not they checked any consent box.

27.     The Spam is a nuisance because it interferes with Plaintiff and other Class Members' use and enjoyment of their email mailboxes by, *inter alia*, causing irritation; acting as a distraction; displacing other, more important (and consented-to) emails; and creating visual clutter.

28.     By sending Spam, Famous Footwear caused Plaintiff and fellow Class Members to waste their time reading or otherwise addressing the Spam (i.e., discerning how, if possible, to unsubscribe from the Spam; block Famous Footwear as a sender; and/or report the Spam to their email provider).

29.     The Spam also consumed valuable storage space in Plaintiff and other Class Members' email mailboxes.  Many of the most popular free email mailboxes (i.e., Apple's iCloud, Google's Gmail, Microsoft's Outlook, and Proton AG's Proton Mail) have storage limits.  Spam emails, as sent by Defendants, can quickly eat into free email mailbox storage space and force users to expend either time and labor to delete messages or money to procure

additional storage space.  For paid email mailbox users, spam emails deplete storage space that has been acquired with hard-earned savings.

## CLASS REPRESENTATION ALLEGATIONS

30.     Plaintiff seeks certification of the following class: All persons in Massachusetts who made a purchase on www.famousfootwear.com using a credit card (The "Class").

31.     Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

32.     The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

33.     **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendants' records.

34.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions

affecting only individual members of the Class.  These common legal and factual questions do

not vary between members of the Class and may be determined without reference to the

individual circumstances of any Class member.  Such questions include, but are not limited to:

    (a)    whether Defendants' conduct as alleged herein violates Massachusetts law, including the provisions of the CPICTA;

    (b)    whether each Defendant is a "person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction" under Mass. Gen. Laws ch. 93, § 105(a);

    (c)    whether an email address constitutes "personal identification information" under Mass. Gen. Laws ch. 93, § 105(a);

    (d)    whether Plaintiff and Class members were injured by Defendants' conduct;

    (e)    whether Plaintiff and Class members are entitled to damages under Chapter 93A; and

35.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the

Class because the named Plaintiff purchased a pair of boots online, in or around September 2023,

from Famous Footwear, paid by credit card, and checked out via the Famous Footwear website's

credit card transaction form.  As part of this process, Plaintiff, like all other Class Members, was

required by Famous Footwear to write personal identification information not required by credit

card issuers—her email address.  Shortly after completing her online Famous Footwear purchase,

Plaintiff, like all other Class Members, began receiving Spam from Famous Footwear.  Plaintiff,

like all other Class Members, never signed up for or otherwise consented to the receipt of this

Spam.  Further, like all other Class Members, Plaintiff experienced how the Spam is a nuisance,

Famous Footwear caused Plaintiff to waste her time reading or otherwise addressing the Spam,

and the Spam consumed valuable storage space in Plaintiff's email mailbox.

36.    **Adequate Representation:** Plaintiff is an adequate representative of the Class

because her interests do not conflict with the interests of the Class members she seeks to

represent, she has retained competent counsel experienced in prosecuting class actions, and she

intends to prosecute this action vigorously.  The interests of members of the Class will be fairly

and adequately protected by Plaintiff and her counsel.

37.    **Superiority:** The class mechanism is superior to other available means for the fair

and efficient adjudication of the claims of members of the Classes.  Each individual member of

the Class may lack the resources to undergo the burden and expense of individual prosecution of

the complex and extensive litigation necessary to establish Defendants' liability.  Individualized

litigation increases the delay and expense to all parties and multiplies the burden on the judicial

system presented by the complex legal and factual issues of this case.  Individualized litigation

also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendants' liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## <u>COUNT I</u>
### Violation Of Chapter 93A
### Based On Violation Of The CPICTA

38.    Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

39.    Plaintiff brings this claim individually and on behalf of the members of the Class

against Defendants.

40.    The CPICTA reads:

No person, firm, partnership, corporation or other business entity that
accepts a credit card for a business transaction shall write, cause to be
written or require that a credit card holder write personal identification
information, not required by the credit card issuer, on the credit card
transaction form. Personal identification information shall include, but

shall not be limited to, a credit card holder's address or telephone number.

The provisions of this section shall apply to all credit card transactions; provided, however, that the provisions of this section shall not be construed to prevent a person, firm, partnership, corporation or other business entity from requesting information is necessary for shipping, delivery or installation of purchased merchandise or services or for a warranty when such information is provided voluntarily by a credit card holder.

Mass. Gen. Laws ch. 93, § 105(a).

41. Defendants BG Retail, LLC and Caleres, Inc. are each a "corporation or other business entity[.]"

42. Famous Footwear "accepts a credit card for business transactions[,]" including for its online sales of goods to consumers like Plaintiff and other Class Members.

43. In contravention of the CPICTA, Famous Footwear "write[s], cause[s] to be written or require[s] that a credit card holder write personal identification information [(the credit card holder's email address)], not required by the credit card issuer, on the credit card transaction form." Mass. Gen. Laws ch. 93, § 105(a).

44. The word "write" is to be broadly construed. The Supreme Judicial Court of Massachusetts has held:

[T]he language of § 105 (a) naturally appears to include all such transactions, whether they are processed manually or electronically. The reference to the verb "write" in § 105 (a) does not foreclose such an interpretation because by definition, the verb encompasses inscriptions made by hand and by typing. Webster's Third New International Dictionary 2640-2641 (1993) (defining "write" to include "to form or produce [a legible character] in, upon, or by means of a suitable medium," "to produce [symbols or words] by machine," and "to form or produce letters, words, or sentences with a pen, pencil, or machine"). *See Allen v. Boston Redev. Auth.*, 450 Mass. 242, 256, 877 N.E.2d 904 (2007) ("Where a statutory term is not defined, it must be understood in accordance with its generally accepted plain meaning"); G. L. c. 4, § 6, Third ("Words and phrases shall be construed according to the common and approved usage of the language").

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 505, 984 N.E.2d 737, 747 (2013).

45.     An email address is "personal identification information" because it provides

merchants like Defendants with enough information to identify, through publicly available

databases, a credit card holder (including their address and telephone number).

46.     An email address is "not required by the credit card issuer."  Cardholder name,

credit card number, expiration date, and/or card verification code are the only four details that

credit card issuers require merchants, like Defendants, to collect for online transactions.[6]

47.     The Famous Footwear website's credit card transaction form (located at

www.famousfootwear.com) is a "credit card transaction form."  On March 11, 2013, the

Supreme Judicial Court of Massachusetts held:

> Section 105 (a) provides that "[n]o person . . . or . . . business entity that
> accepts a credit card for a business transaction shall write, cause to be
> written or require that a credit card holder write personal identification
> information . . . on the credit card transaction form." G. L. c. 93, § 105 (a).
> The section affirmatively declares that its provisions "shall apply to *all*
> credit card transactions" (emphasis supplied), and it contains no language
> expressly limiting a "credit card transaction form" to a paper form. . . .
> Based on the words chosen by the Legislature, therefore, we interpret
> "credit card transaction form" to apply to transactions involving both
> electronic and paper forms.

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 505, 984 N.E.2d 737, 747 (2013).  Prior thereto,

on January 6, 2012, the United States District Court for the District agreed:

> Michaels  contends  that  the  language  of  the  Act  does  not  include  an

---

[6] https://upgradedpoints.com/credit-cards/security-code-cvv/ ("all merchants require . . . the
cardholder's name, card number, and expiration date. Most merchants also require a CVV code
when purchasing online[.]").  *See also* https://www.chase.com/personal/credit-
cards/education/basics/why-do-some-sites-not-require-cvv ("when you're making a credit card
purchase online[,] . . . in addition to the credit card number and expiration date, you may also be
asked for the CVV[.]"); https://money.com/what-is-a-credit-card-cvv/ ("The merchant collects a
customer's card information: the account number, the expiration date and the CVV number.");
https://listings.pcisecuritystandards.org/documents/Protecting_Telephone_Based_Payment_Card
_Data_v3-0_nov_2018.pdf ("[f]or card-not-present (CNP) fraud, a criminal only needs to obtain
the PAN [(Primary Account Number, which is the card number)], cardholder name, expiry date
and, sometimes, the card verification code[.]").

electronically stored transaction form, such as a database, and that the "transaction form" must be a physical document, e.g. a printed slip or receipt. Michaels' Mem. 11–12.

For several reasons, this Court rejects Michaels' argument. The Act provides that Section 105(a) "shall apply to all credit card transactions," Mass. Gen. Laws ch. 93, § 105(a), thus the plain meaning of the words naturally includes all such transactions, whether they are processed manually, electronically, or by some other method. See *In re Shamus Holdings*, 642 F.3d at 265 ("Unless specially defined, the legislature's words are generally deemed to carry their plain and ordinary meaning." (citing *Boivin*, 225 F.3d at 40)). . . . The natural language of the Act does not distinguish between paper and electronic transaction forms, and an individual who creates an electronic form violates the Act just as does an individual who writes on a paper form. . . . Therefore, the plain meaning of the words "credit card transaction form" under Section 105(a) refer equally to an electronic or a paper transaction form.

*Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 446–47 (D. Mass. 2012).

48.     The CPICTA's limited exception does not apply because an email address is not necessary for shipping, delivery, installation or a warranty, yet Defendants required consumers to provide an email address.

49.     Per the Supreme Judicial Court of Massachusetts, "When a merchant acquires personal identification information in violation of § 105 (a) and uses the information for its own business purposes, whether by sending the customer unwanted marketing materials or by selling the information for a profit, the merchant has caused the consumer an injury that is distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9." *Tyler*, 464 Mass. at 503-04.

50.     "[R]eceipt of unwanted marketing material as a result of a § 105 (a) violation represents an invasion of the consumer's personal privacy causing injury or harm worth more than a penny, and the consumer is thus entitled to the minimum statutory damage award of twenty-five dollars under G.L. c. 93A, § 9(3)." *Tyler*, 464 Mass. at 504 n.20.

51.     Plaintiff seeks damages as a result of Defendants' violations of Mass. Gen. Laws ch. 93, § 105.  Mass. Gen. Laws ch. 93, § 105(d) states: "Any violation of the provisions of this

chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of

chapter 93A."  Thus, Plaintiff seeks statutory damages of not less than twenty-five dollars per

violation, the recovery of up to three but not less than two times this amount because Defendants

acted willfully and knowingly (*see infra*), and attorney's fees and costs, pursuant to the

Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, *et seq.*

52.     In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on June 20, 2024, Plaintiff'

counsel served Defendants with written notice of their violation of Ch. 93A and a demand for

relief.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.  Defendants did not

make a written tender of settlement for the putative class and denied all wrongdoing.

**<u>COUNT II</u>**
**Violation of Mass. Gen. Laws Ch. 93A, *et seq.***
**("Massachusetts Unfair and Deceptive Business Practices Act")**

53.     Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the members of the Class

against Defendant.

55.     Section 2 of Chapter 93 – the "Massachusetts Unfair and Deceptive Business

Practices Act" – prevents the use of "unfair or deceptive acts or practices in the conduct of any

trade or commerce."

56.     Pursuant to the definitions codified at Chapter 93A § 1, each Defendant is a

"person."   Defendants are engaged in "trade" and "commerce" in Massachusetts because

Defendants regularly transacts business and contracts to supply services in Massachusetts that

directly or indirectly affect the people of Massachusetts – Defendants offer consumer goods for

sale online to Massachusettsans like Plaintiff and Class Members.

57.     An act is "deceptive" under Chapter 93A "if it could reasonably be found to have

caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

58.     Defendants engage in "deceptive" acts, pursuant to this definition.

59.     On famousfootwear.com, shoppers are required by Defendants to enter their email address, to proceed with the checkout process.  If a consumer attempts to opt out of Defendants' email collection by leaving the email field blank, they are shown an error message that declares email is required and they are precluded from continuing to the next checkout stages.

60.     Until recently, Defendants *appeared* to solicit consent to send future emails to shoppers (with a checkbox marked, "By entering your email, you agree to receive emails from us about new products, exclusive offers, and updates. Please see our privacy policy to learn more about how we use your information.").  But *even if consumers chose not to click this box*, Defendants still sent shoppers marketing emails.

61.     Defendants' misrepresentation that Famous Footwear online shoppers had agency over whether or not they received Defendants' emails (exercised via the checkbox) was deceptive.  Consumers had no agency; Defendants' marketing emails were sent irrespective of consumers' choices.  Therefore, Defendants' emails constitute Spam.

62.     By engaging in the acts and omissions alleged above and incorporated herein, Defendants have engaged in unfair or deceptive acts or practices in the conduct of trade or commerce.

63.     Defendants' misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

64.     Defendants' acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

65.     Defendants' misconduct caused Plaintiff and Class Members to suffer an injury, adverse consequence, or loss.  Per the Supreme Judicial Court of Massachusetts, "When a merchant acquires personal identification information in violation of § 105 (a) and uses the information for its own business purposes, whether by sending the customer unwanted marketing materials or by selling the information for a profit, the merchant has caused the consumer an injury that is distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9." *Tyler*, 464 Mass. at 503-04.

66.     "[R]eceipt of unwanted marketing material as a result of a § 105 (a) violation represents an invasion of the consumer's personal privacy causing injury or harm worth more than a penny, and the consumer is thus entitled to the minimum statutory damage award of twenty-five dollars under G.L. c. 93A, § 9(3)." *Tyler*, 464 Mass. at 504 n.20.

67.     Further, the Spam is a nuisance; it interferes with Plaintiff and other Class Members' use and enjoyment of their email mailboxes by, *inter alia*, causing irritation; acting as a distraction; displacing other, more important (and consented-to) emails; and creating visual clutter.

68.     By sending Spam, Famous Footwear caused Plaintiff and fellow Class Members to waste their time reading or otherwise addressing the Spam (i.e., discerning how, if possible, to unsubscribe from the Spam; block Famous Footwear as a sender; and/or report the Spam to their email provider).

69.     The Spam also consumed valuable storage space in Plaintiff and other Class Members' email mailboxes.

70.     The Massachusetts Unfair and Deceptive Business Practices Act represents a fundamental public policy of the Commonwealth of Massachusetts.

71.     For each loss, Plaintiff and each Class Member may recover an award of actual

damages or twenty-five dollars, whichever is greater.  Mass. Gen. Laws Ch. 93A § 9(3).

72.    Because Defendants acted willfully or knowingly (by misrepresenting that Famous Footwear online shoppers have agency over whether or not they receive marketing emails, to be exercised by a checkbox falsely appearing to solicit consent), Plaintiff and each Class Member may recover up to three but not less than two times this amount.  In addition, Plaintiffs may recover attorneys' fees and costs.

73.    In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on June 20, 2024, Plaintiff' counsel served Defendants with written notice of their violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.  Defendants did not make a written tender of settlement for the putative class and denied all wrongdoing.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.    For an order certifying the Class and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class, on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated: November 8, 2024

Respectfully submitted,

**SMITH KRIVOSHEY, P.C.**

By: */s/ Joel D. Smith*
       Joel D. Smith

Joel D. Smith (BBO No. 712418)
867 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Max S. Roberts*
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
       mroberts@bursor.com

*\*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

## LOCAL RULE 5.2(b) CERTIFICATE OF SERVICE

I, Joel D. Smith, certify that a copy of the foregoing document, filed through CM/ECF

system, will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF) on November 8, 2024.

*s/ Joel D. Smith*
Joel D. Smith