**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARY CARR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BG RETAIL, LLC and CALERES, INC.,<br><br>Defendants. | Case No. 1:24-cv-12387-AK<br><br>Hon. Angel Kelley |

**PLAINTIFF'S MEMORANDUM OF LAW**
**<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

Dated: December 23, 2024

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith (BBO No. 712418)
867 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Max S. Roberts*
Kyle D. Gordon*
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com
kgordon@bursor.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE CPICTA APPLIES TO ONLINE TRANSACTIONS ..... 2

A. The Plain Statutory Language And The Supreme Judicial Court's Holding In *Tyler* Support Plaintiff's Interpretation Of The CPICTA ..... 2

B. Defendant's Counterarguments Are Unavailing ..... 8

II. FAMOUS FOOTWEAR REQUIRES ONLINE SHOPPERS TO USE ITS WEBSITE'S CREDIT CARD TRANSACTION FORM ..... 13

III. CPICTA'S EXCEPTIONS DO NOT APPLY ..... 14

IV. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE MASSACHUSETTS UNFAIR AND DECEPTIVE BUSINESS PRACTICES ACT ..... 15

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ambers v. Beverages & More, Inc.*,
236 Cal. App. 4th 508 (2015) ........ 12

*Ambers v. Buy.com, Inc.*,
617 F. App'x 728 (9th Cir. 2015) ........ 12

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
411 Mass. 451 (1991) ........ 15

*Apple Inc. v. Superior Ct.*,
56 Cal. 4th 128 (2013) ........ 12

*Aspinall v. Philip Morris Companies, Inc.*,
442 Mass. 381 (2004) ........ 15

*Delaney v. Commonwealth*,
415 Mass. 490 (Mass. 1993) ........ 3

*Derby v. Jos. A. Bank Clothiers, Inc.*,
2014 WL 7361023 (D. Mass. Dec. 23, 2014) ........ 13

*Devine v. Bd. of Health of Westport*,
66 Mass. App. Ct. 128 (2006) ........ 3

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. Apr. 23, 2024) ........ 15

*Federal Trade Commission v. Roca Labs, Inc.*,
345 F. Supp. 3d 1375 (M.D. Fla. 2018) ........ 16

*Federal Trade Commission v. Toysmart.com, LLC*,
2000 WL 34016434 (D. Mass. July 21, 2000) ........ 16

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022) ........ 15

*Marco v. Green*,
415 Mass. 732 (1993) ........ 3

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
775 F.3d 109 (1st Cir. 2014) ........ 16

*Mehrens v. Redbox Automated Retail LLC*, 2012 WL 77220 (C.D. Cal. Jan. 6, 2012), *aff'd sub nom.*, *Sinibaldi v. Redbox Automated Retail, LLC*, 754 F.3d 703 (9th Cir. 2014) .......... 12

*Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317 (D. Mass. 2012) .......... 15

*Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liability Policies and Bonds*, 382 Mass. 580 (Mass., 1981) .......... 3

*Sagar v. Kelly Automotive Group, Inc.*, 2021 WL 5567408 (D. Mass. Nov. 29, 2021) .......... 17

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492 (2013) .......... passim

*Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438 (D. Mass. 2012) .......... passim

*Universal Mach. Co. v. Alcoholic Beverages Control Com'n*, 301 Mass. 40 (1938) .......... 3

*Vita v. New England Baptist*, 494 Mass. 824 (2024) .......... 9

**STATUTES**

Cal. Civ. Code § 1747.08 .......... 10, 11, 12

Mass. Gen. Laws ch. 93, § 104 .......... 11

Mass. Gen. Laws ch. 93, § 105(a) .......... passim

Mass. Gen. Laws ch. 93A §2(a) .......... 2, 15

**OTHER AUTHORITIES**

Kyle McKibbin, *Regulating Data Breaches: A Data Superfund Statute*, 23 VAND. J. ENT. & TECH. L. 649 (2021) .......... 16

PRESENT, MERRIAM-WEBSTER DICTIONARY .......... 10

PRESENTATION, BLACK'S LAW DICTIONARY (12th ed. 2024) .......... 10

PRESENTATION, CAMBRIDGE ACADEMIC CONTENT DICTIONARY .......... 10

Plaintiff Mary Carr ("Plaintiff") respectfully submits the following memorandum in opposition to Defendant BG Retail, LLC and Caleres, Inc.'s ("Defendants") Motion to Dismiss the First Amended Complaint (ECF No. 23) (the "Motion" or "MTD").

## INTRODUCTION

Defendants operate a website entitled famousfootwear.com (the "Website"). First Amended Complaint (ECF No. 18) ("FAC") ¶ 11. When consumers make a purchase online or want to pick up an item at a Famous Footwear store, they are *required* to enter their e-mail address. *Id.* ¶¶ 19, 22. Ostensibly, this is only for shipping purposes, even though Defendants could perfectly update consumers on their order with only their shipping address and phone number. *See* FAC ¶ 19. And, at least previously, Defendants appeared to give consumers the option to receive marketing e-mails when they were forced to provide their e-mail address:


1. Delivery

Contact Information

Email Address*
For shipping confirmation

By entering your email, you agree to receive emails from us about new products, exclusive offers, and updates. Please see our privacy policy to learn more about how we use your information.

*Id.* ¶ 20. But at all relevant times, Defendants used consumers e-mail addresses beyond their stated purposes. That it, whereas Defendants represented they were only collecting e-mail addresses for shipping purposes, "Defendants then use the collected email addresses to send unwanted commercial solicitations—spam marketing emails ('Spam')—to said consumers." *Id.* ¶ 6. This was so "*even if consumers chose not to click this box*" to opt into marketing e-mails. *Id.* ¶ 20. Accordingly, the "shipping information" is just a pretext for Defendants to spam consumers with marketing e-mails, whether consumers want them or not.

Fortunately for citizens of the Commonwealth, the Massachusetts General Assembly has provided a remedy for this conduct. Specifically, Massachusetts Consumer Privacy in Commercial Transactions Act, Mass. Gen. Laws ch. 93, § 105 (the "CPICTA") prohibits a company "that accepts a credit card for a business transaction" from "writ[ing] … or require[ing] that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form." *See also* FAC ¶ 2. The purpose of this provision "was to safeguard consumer privacy and more particularly to protect consumers using credit cards from becoming the recipients of unwanted commercial solicitations from merchants with access to their identifying information." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 498 (2013). Because Defendants require consumers to provide their e-mail addresses upon filling out the "credit card" form on the Website, Defendants have violated the CPICTA. And, because Defendants use the e-mail addresses for purposes beyond those represented on the Website, Defendants have also committed deceptive and unfair practices in violation of Mass. Gen. Laws. ch. 93A.

Defendants assert multiple defenses, but all ignore the holdings of the Massachusetts Supreme Judicial Court and courts within this District that establish the CPICTA was plainly meant to prevent this exact set of conduct. According, Defendants' Motion should be denied.

## ARGUMENT

### I. THE CPICTA APPLIES TO ONLINE TRANSACTIONS

#### A. The Plain Statutory Language And The Supreme Judicial Court's Holding In *Tyler* Support Plaintiff's Interpretation Of The CPICTA

Defendants argue that the Court should "decline to interpret the CPICTA expansively to cover online transactions." MTD at 6. This is wrong, as it ignores the CPICTA's plain language, legislative history, and interpretive case law.

"Where [a] statute is not ambiguous or couched in terms suggesting that [the Court] must

look beyond its express language, [the Court is to] construe the statute in accordance with its plain meaning." *Devine v. Bd. of Health of Westport*, 66 Mass. App. Ct. 128, 131 (2006) (quoting *Marco v. Green*, 415 Mass. 732, 739 (1993)); *see also Delaney v. Commonwealth*, 415 Mass. 490, 494 (Mass. 1993) ("The text of a statute must be construed in accordance with its plain meaning when it is clear and unambiguous.") (cleaned up); *Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liability Policies and Bonds*, 382 Mass. 580, 585 (Mass., 1981) ("[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language.") (cleaned up).

Here, the Massachusetts General Court expressly stated that "[t]he provisions of th[e] [CPICTA] shall apply to *all* credit card transactions." Mass. Gen. Laws ch. 93, § 105(a) (emphasis added). This was an intentional drafting choice. Had the Massachusetts General Court wished to limit the CPICTA to certain types of credit card transactions (*i.e.*, those processed manually as opposed electronically), it could have written the statute accordingly. That was obviously not the Massachusetts General Court's intent: "[w]hile the maxim of statutory construction that the expression of one thing is the exclusion of another is not conclusive of legislative intent, [it] is to be considered with regard to the object sought to be obtained by the entire legislation." *Universal Mach. Co. v. Alcoholic Beverages Control Com'n*, 301 Mass. 40, 45 (1938) (cleaned up). In other words, when the Massachusetts General Court wrote that the CPICTA applies to all credit card transactions, it meant that the CPICTA applies to *all* credit card transactions, not those only occurring in person.

The Massachusetts Supreme Judicial Court and courts in this District have found the foregoing instructive when interpreting the CPICTA. In *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438 (D. Mass. 2012) ("*Tyler I*"), Judge Young rejected an argument very similar to that

raised by Defendants here:

> Tyler has alleged that Michaels' cashier entered Tyler's ZIP code, together with her credit card number and name, into the electronic card terminal, which contained a computerized "transaction form." Michaels contends that the language of the Act does not include an electronically stored transaction form, such as a database, and that the "transaction form" must be a physical document, e.g. a printed slip or receipt.
>
> For several reasons, this Court rejects Michaels' argument. *The Act provides that Section 105(a) "shall apply to all credit card transactions," Mass. Gen. Laws ch. 93, § 105(a), thus the plain meaning of the words naturally includes all such transactions, whether they are processed manually, electronically, or by some other method.* … The natural language of the Act does not distinguish between paper and electronic transaction forms, and an individual who creates an electronic form violates the Act just as does an individual who writes on a paper form. … Therefore, the plain meaning of the words 'credit card transaction form' under Section 105(a) refer equally to an electronic or a paper transaction form.

*Id.* at 446 (emphasis added, internal citations omitted). Like Defendants (MTD at 5 n.1), Michaels pointed to "the California statute," yet this did not change the result. *Tyler I*, 840 F. Supp. 2d at 446 n.6. Similarly, in *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492 (2013) ("*Tyler II*"), the Supreme Judicial Court held:

> The section affirmatively declares that its provisions "shall apply to *all* credit card transactions" (emphasis supplied), and it contains no language expressly limiting a "credit card transaction form" to a paper form. Accordingly, as noted by the judge, the language of § 105(a) naturally appears to include all such transactions, whether they are processed manually or electronically. *The reference to the verb "write" in § 105(a) does not foreclose such an interpretation because by definition, the verb encompasses inscriptions made by hand and by typing.* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2640-41 (1993) (defining "write" to include "to form or produce [a legible character] in, upon, or by means of a suitable medium," "to produce [symbols or words] by machine," and "to form or produce letters, words, or sentences with a pen, pencil, or machine").

> …
>
> Based on the words chosen by the Legislature, therefore, we interpret "credit card transaction form" to apply to transactions involving both electronic and paper forms.

*Tyler II*, 464 Mass. at 505 (emphasis added except where indicated).

The same reasoning applies here. Just as in *Tyler I* and *II*, the credit card transactions at issue were "processed … electronically, or [minimally] by some other method[]" (*Tyler I*, 840 F. Supp. 2d at 446), and the violative "inscriptions [were] made … by typing." *Tyler II*, 464 Mass. at 505. *See* FAC ¶ 5 ("Famous Footwear requires each online shopper using its website's credit card transaction form to write personal identification information not required by credit card issuers—their email address. Famous Fo[o]twear also writes and/or causes this information to be written on its website's credit card transaction form."); *see also id.* ¶¶ 9, 18-24, 43, 47, 59.

Further, and despite Defendants' protestations to the contrary (MTD at 7-8), the instant matter implicates the same privacy concerns discussed by the Supreme Judicial Court in *Tyler II*. Per the Supreme Judicial Court:

> there appear to be at least two types of injury or harm that might in theory be caused by a merchant's violation of the statute: *the actual receipt by a consumer of unwanted marketing materials as a result of the merchant's unlawful collection of the consumer's personal identification information*; and the merchant's sale of a customer's personal identification information

*Tyler II*, 464 Mass. at 503-04 (emphasis added); *see also id.* at 498 (holding "the [CPICTA's] purpose was to safeguard consumer privacy and more particularly to protect consumers using credit cards from becoming the recipients of unwanted commercial solicitations from merchants with access to their identifying information." In support, the Supreme Judicial Court looked to the CPICTA's "title and caption [which both] expressly reference "'consumer privacy in commercial transactions,' reinforcing the view that the Legislature indeed was concerned[] … about privacy

issues in the realm of commercial dealings." *Id.* at 496. The court also examined the CPICTA's legislative history, including documentation summarizing how:

> [r]ecording unnecessary personal information on credit card transaction forms leads to an invasion of a card holder's privacy. Many businesses use the additional personal information to compile mailing lists for their own use, or to sell to direct mail houses.
>
> …
>
> The statute forbids merchants from requiring provision of this private information … when the card issuers do not require such information to complete the transaction. *This will prohibit merchants from getting additional information for their own business purposes as a pretense for completing the credit card transaction.*

*Id.* at 498 n.10 (emphasis added).

Again, this case is on all fours with *Tyler*. *First*, it is about the "disclosure of personal information." *Tyler II*, 464 Mass. at 496; *see also* FAC ¶ 15 ("As industry leaders, trade groups, and courts agree, an email address is 'personal identification information.'"); *id.* ¶¶ 16-17, 45.

*Second*, just like the defendant in *Tyler*, Famous Footwear "requir[ed the] provision of this private information … when the card issuers do not require [it ] to complete the transaction." *Tyler II*, 464 Mass. at 498 n.10; *see also* FAC ¶ 46 ("An email address is 'not required by the credit card issuer.' Cardholder name, credit card number, expiration date, and/or card verification code are the only four details that credit card issuers require merchants, like Defendants, to collect for online transactions.").

*Finally*, Famous Footwear sent Plaintiff and other Class Members "unwanted marketing materials as a result of the merchant's unlawful collection of the consumer's personal identification information." *Tyler II*, 464 Mass. at 504; *see also* FAC ¶ 6 ("Defendants then use the collected email addresses to send unwanted commercial solicitations—spam marketing emails ('Spam')—

to said consumers. In fact, even if consumers chose not to click an email consent checkbox, Defendants still sent shoppers marketing emails."); FAC ¶ 26 ("For individuals like Plaintiff and other Class Members, these commercial solicitations constitute unwanted Spam. Plaintiff and Class Members were never given the option to not to provide their email address, and they were sent emails regardless of whether or not they checked any consent box."); FAC ¶¶ 9, 27-29, 67-69. This is precisely what the CPICTA was designed to prevent; "the Spam is a nuisance, Famous Footwear caused Plaintiff to waste her time reading or otherwise addressing the Spam, and the Spam consumed valuable storage space in Plaintiff's email mailbox." FAC ¶ 35.

As a last point, it is telling that, in the Motion, Defendants offer no factual support for notion that, without email addresses, they would be "unable to fulfill [] order[s] (*e.g.*, delivering the purchased item[s]) or keep [] consumer[s] informed about [] delivery status." MTD at 7. This makes no sense – "an email address is *not necessary* for shipping, delivery, installation or a warranty" (FAC ¶ 48) (emphasis added)), as "[c]ustomers furnish their shipping address for delivery, and they must provide their phone number, as well." *Id.* ¶ 23. Obviously, address and phone number alone are sufficient to route and deliver packages accurately, and now there are even additional means by which retailers can communicate with customers (i.e., online shipment monitoring tools that merely require the entry of a tracking number).

In addition, the fact that "Defendants require shoppers to provide their email address not only when items are being shipped, but also when an item is being picked up at a local Famous Footwear retail location[]" (*id.* ¶ 22) suggests that Famous Footwear got "additional information for [its] own business purposes as a pretense for completing the credit card transaction[s here at issue]." *Tyler II*, 464 Mass. at 498 n.10. Indeed, even if an e-mail were necessary to complete a transaction (it is not), Defendants do not allow consumers to opt out of marketing e-mails unrelated

to the delivery of their package, which supports that providing shipping updates is just a pretext. FAC ¶¶ 19, 26, 59.

**B. Defendant's Counterarguments Are Unavailing**

Defendants cannot reasonably dispute the above. Instead, Defendants make arguments in an attempt to distort and dodge the plain language of the CPICTA. All these points fail; they do not change the simple fact that the CPICTA applies to "*all* credit card transactions." Mass. Gen. Laws ch. 93, § 105(a) (emphasis added).

Unconvincingly, Defendants suggest that, because Plaintiff provided *some* "personal information covered by CPICTA" for delivery purposes—namely, her "address[] and her phone number[]"—this means that barring the collection of her email address "would not[] … further the Act's purpose to enhance consumer protection against unlawful access to [] PII or unwarranted solicitation." MTD at 7. This is a straw man argument. Plaintiff never alleges that Defendants violated the CPICTA by collecting address and phone number because *that* personal identification information *is* "necessary for shipping[ or] delivery" (Mass. Gen. Laws ch. 93, § 105(a)) and there is no evidence that Famous Footwear uses address or phone number for its own business purposes (*i.e.*, sending unwanted marketing materials). The same is not true of e-mail addresses. Argument § I.A, *supra*. Indeed, the harms the Massachusetts General Court sought to address with the CPICTA (i.e., spam) *were* caused by Defendants' email-related practices.

It is also untrue that Defendants' email-related practices fall outside the purview of the CPICTA because, unlike the ZIP codes at issue in *Tyler*, e-mail addresses were not used by Famous Footwear for the "discovery of the customer's name and address." MTD at 8. Again, "the [CPICTA's] purpose was … to protect consumers using credit cards from becoming the recipients of unwanted commercial solicitations from merchants with access to their identifying

information." *Tyler II*, 464 Mass. at 498. That is what happened in *Tyler*: "learning Tyler's ZIP code allowed Michaels to obtain her full address, which in turn brought on what, to Tyler, no doubt seems to be a deluge of unwanted mail." *Tyler I*, 840 F. Supp. 2d at 450-51.

The same happened here, albeit more efficiently. Learning Plaintiff's email address allowed Famous Footwear to misuse that means of communicating with her and brought on unwanted "spam marketing emails from Famous Footwear." FAC ¶ 9. In other words, the defendant in *Tyler* had to jump through an extra hoop to derive the plaintiff's name from his zip code to spam him with unwanted marketing messages. That Defendant did not have to jump through that hoop here (because it learned Plaintiff's e-mail address and could communicate with her directly) is a superficial distinction. Indeed, it only makes the violation here more pervasive.

In addition, Defendants rely on the Supreme Judicial Court's holding in *Vita v. New England Baptist*, 494 Mass. 824, 840 (2024) to support the proposition that the Court should "decline to interpret the CPICTA expansively to cover online transactions, given that such technology did not exist when that act was adopted." MTD at 6. But *Vita* concerned the Massachusetts wiretap act, which is a criminal statute. *Id.* at 850. And, because the term "communications" was ambiguous as to whether it applied to Internet interactions, "the rule of lenity applie[d]," which required construing the term in favor of the defendant (*i.e.*, holding that the statute did not apply to Internet communications). *Id.* By contrast, the CPICTA is solely a civil statute and no such ambiguity exists: the statute applies to *all* credit card transactions. Mass. Gen. Laws ch. 93, § 105(a). Moreover, the Supreme Judicial Court has already said of the CPICTA:

> [t]here are other reasons to reject a narrow interpretation of the statutory language advocated by Michaels. To construe § 105 (a) as inapplicable to electronic credit card transactions would render the statute essentially obsolete in a world where paper credit card

> transactions are a rapidly vanishing event. Such a construction would thus fail to carry out the statutory purpose of protecting consumer privacy because it would allow merchants to avoid the statute's prohibition against collecting personal identification information simply by using electronic means to capture and reflect any electronic credit card transaction. Where possible, a statute should not be interpreted to render it ineffective.

*Tyler II*, 464 Mass. at 505-506. The same reasoning applies to online transactions, and especially online transactions where consumers are forced to unnecessarily provide their e-mail address and that e-mail address is misused for other purposes by businesses.

Defendants would also have the Court look to case law regarding California's Song-Beverly Credit Card Act of 1974, Cal. Civ. Code § 1747.08 ("SBCCA"), whose text, legislative history, and objectives all differ from those of the CPICTA. MTD at 4-6. The Court should decline this invitation. Unlike the CPICTA, the SBCCA does not state that its "provisions … shall apply to all credit card transactions." *Compare* Mass. Gen. Laws ch. 93, § 105(a) (emphasis added); *with* Cal. Civ. Code § 1747.08. On the contrary, the SBCCA's text indicates that it only applies to in-person transactions.

For one, the SBCCA defines "[c]redit card" as "any card, plate, coupon book, or other single credit device existing for the purpose of being used from time to time *upon presentation* to obtain money, property, labor, or services on credit." Cal. Civ. Code § 1747.02(a) (emphasis added). The word "presentation" means "the act of giving or showing something." PRESENTATION, CAMBRIDGE ACADEMIC CONTENT DICTIONARY[1]; *see also* PRESENTATION, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The delivery of a document to an issuer or named person for the purpose of initiating action under a letter of credit[.]"); PRESENT, MERRIAM-WEBSTER DICTIONARY ("to give or bestow formally"; "to bring … before the public"; "to bring or

[1] https://dictionary.cambridge.org/dictionary/english/presentation.

introduce into the presence of someone"; "to offer to view").[2] Thus, under the SBCCA, a "[c]redit card" is a credit device that must be physically given or shown. The CPICTA, by contrast, does not contain this requirement, as it defines a "[c]redit [c]ard" as "any instrument or device … issued with or without fee by an issuer for the use of the card holder in obtaining money, goods, services, or anything else of value on credit." Mass. Gen. Laws ch. 93, § 104.

Further, the Motion's excerpt of the SBCCA does not, as Defendants posit, contain all "[t]he relevant portion[s]" thereof. MTD at 5. It is true that Cal. Civ. Code § 1747.08(a), as quoted by Defendants, proscribes certain conduct, on the part of "person[s], firm[s], partnership[s], association[s], or corporation[s] that accept[] credit cards." But Cal. Civ. Code § 1747.08(d) is also instructive. It provides:

> This section does not prohibit any person, firm, partnership, association, or corporation from requiring the cardholder, as a condition to accepting the credit card as payment in full or in part for goods or services, to provide reasonable forms of positive identification, which may include a driver's license or a California state identification card, or where one of these is not available, another form of photo identification, provided that none of the information contained thereon is written or recorded on the credit card transaction form or otherwise. If the cardholder pays for the transaction with a credit card number and does not make the credit card available upon request to verify the number, the cardholder's driver's license number or identification card number may be recorded on the credit card transaction form or otherwise.

Cal. Civ. Code § 1747.08(d).

Much of the SBCCA's case law—including that cited by Defendants—emphasizes this subdivision (and/or its subject matter) in reaching the conclusion that online transactions fall outside the scope of the SBCCA. *See*, *e.g.*, *Mehrens v. Redbox Automated Retail LLC*, 2012 WL 77220, at *3 (C.D. Cal. Jan. 6, 2012), *aff'd sub nom.*, *Sinibaldi v. Redbox Automated Retail, LLC*,

[2] https://www.merriam-webster.com/dictionary/present.

754 F.3d 703 (9th Cir. 2014) ("In the context of a brick-and-mortar transaction, a customer's identity can be verified by having a salesperson examine the customer's driver's license or passport. … By contrast, collection of personal information in an online or unattended kiosk transaction may be the only means of verifying a customer's identity."); *Apple Inc. v. Superior Ct.*, 56 Cal. 4th 128, 140-41 (2013) ("The safeguards against fraud that are provided in section 1747.08(d) are not available to the online retailer … We cannot conclude that … section 1747.08(a)'s prohibitions [] apply to such transactions despite the unavailability of section 1747.08(d)'s safeguards."); *Ambers v. Beverages & More, Inc.*, 236 Cal. App. 4th 508, 515 (2015) ("Like [other] online retailer[s] … BevMo had no means, without obtaining plaintiff's PII, of verifying that plaintiff was an authorized user of the credit card…"); *Ambers v. Buy.com, Inc.*, 617 F. App'x 728, 729-30 (9th Cir. 2015) ("[We] believe the California Supreme Court would hold that Ambers' purchase of goods for delivery from Buy.com is outside the ambit of the Act as well.").

By contrast, the CPICTA has no analogous language permitting entities to:

> (a) Require that credit card holders provide identification (i.e., driver's license, state ID card, or other photo identification), as a condition to accepting a credit card as payment, provided none of the ID information is written or recorded.
>
> (b) Record driver's license number or identification card number if the credit card holder does not make the credit card available upon request to verify the number.

*Compare* Mass. Gen. Laws ch. 93, § 105(a); *with* Cal. Civ. Code § 1747.08(d). Thus, the caselaw finding that the SBCCA does not cover online transactions is inapposite. Moreover, Defendants' SBCCA case law relies on inaccurate assumptions, including about fraud prevention in online transactions. *See*, *e.g.*, *Apple*, 56 Cal. 4th at 151-56 (Kennard, J., dissenting); *id.* at 156-64 (Baxter, J., dissenting). In Defendants' Motion, the word "fraud" never so much as makes an appearance.

Clearly, Defendants' e-mail-related practices are not designed to prevent fraud; they're designed to inundate shoppers with marketing materials in violation of the CPICTA.

## II. FAMOUS FOOTWEAR REQUIRES ONLINE SHOPPERS TO USE ITS WEBSITE'S CREDIT CARD TRANSACTION FORM

Defendants argue that "[P]laintiff fails to plausibly plead that the [Famous Footwear website] location where she was required to provide her email address is a 'credit card transaction form[]'" because "[n]owhere in this section is a credit card number, expiration date, or card verification code requested, and the name requested is that of the shipment recipient, which is not necessarily the name of the cardholder." MTD at 8. However, Plaintiff offers detailed allegations (including screenshots) concerning the Famous Footwear website's credit card transaction form. *See* FAC ¶¶ 19-24. These allegations are sufficient at the present stage. *See*, *e.g., Tyler II*, 464 Mass. at 505 n.22 ("Whether the electronic form into which Michaels employees enter zip codes is actually an electronic credit card transaction form is a factual question to be determined by the District Court judge."); *Derby v. Jos. A. Bank Clothiers, Inc.*, 2014 WL 7361023, at *3-4 (D. Mass. Dec. 23, 2014) ("The complaint [] alleges that defendant recorded plaintiff's zip code 'into an electronic credit card transaction form.' … [T]he additional facts that might further illuminate the details of the purported credit card transaction form are not required at the pleading stage. Facts about the actual nature of the form are a proper subject for discovery.") (citing *Tyler II*, 464 Mass. at 505 n.22).

In any event, *Tyler I* is again instructive. As Judge Young noted, the "transaction form" in that case "includes the template in which the credit card information is entered, whether it is entered manually or electronically, and the receipt or slip is an imprinted or printed copy of the transaction form at the end of the transaction." *Tyler I*, 840 F. Supp. 2d at 446-47. Judge Young went on to specify that "[i]f the personal identification information is recorded on the receipt, this

would also be a violation of Section 105(a) … While the receipt may be a redacted copy of the transaction form, it too is a 'transaction form' as that phrase is used in the Act." *Id.* at 447. This is because:

> [W]hile the language of Section 105(a) protects only the information recorded "in the transaction form," this does not mean, as Michaels contends, that the Act is concerned only with what occurs at the time of the credit card transaction. Timing is irrelevant, provided there is a causal relationship between the act of recording the information ("writes, cause to be written or require") and the place where this information is written (the "transaction form"). Thus, a retailer cannot avoid the reach of Section 105 by temporarily writing a customer's personal identification information on a separate document and later incorporating it into a "transaction form."

*Id.* at 444 n.3 (cleaned up).

Accordingly, even if Famous Footwear online shoppers enter their credit card details (*see* FAC ¶ 24 (portion of image concerning "Credit Card")) *after* they enter their email address (*see* FAC ¶ 19), that is irrelevant. "Famous Footwear [still] writes, cause to be written, and requires that a credit card holder write the credit card holder's email address on Famous Footwear's credit card transaction form." FAC ¶ 24. This is plainly shown by the example email address ("example@gmail.com") that is written twice at FAC ¶ 24.[3]

## III. CPICTA'S EXCEPTIONS DO NOT APPLY

Defendants argue their conduct "fall[s] within the exception of requesting such information for delivery purposes[]" (MTD at 13), based on "the 'delivery title at the top of the [Famous Footwear website's credit card transaction form] and the text above the email address input field: 'For shipping confirmation.'" MTD at 12. Again, however, an e-mail address is not necessary for

[3] Notably, despite Defendants' assertion that email address and credit card details do not appear in the same "section in question on the webpage" (MTD at 8), "example@gmail.com" even appears directly in the "Credit Card" section. FAC ¶ 24.

shipping or delivery; a phone number and shipping address are. Argument § I.A, *supra*. And Defendants clearly use e-mail addresses for purposes besides shipping or delivery: sending unwanted marketing materials that the CPICTA protects against. *Id*. Thus, this exception does not apply.

## IV. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE MASSACHUSETTS UNFAIR AND DECEPTIVE BUSINESS PRACTICES ACT

Last, Defendants contend that Count II of the FAC fails because Plaintiff "fail[s] to plausibly establish any misrepresentation or deceptive conduct." MTD at 13. This is wrong.

Mass. Gen. Laws ch. 93A §2(a) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" and the Massachusetts Supreme Judicial Court has "stated that conduct is deceptive if it possesses 'a *tendency* to deceive.'" *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 394 (2004) (emphasis added; internal quotations omitted). Here, the presence of a checkbox tends to deceive consumers because the checkbox serves zero function and "marketing emails were sent irrespective of consumers' choices." FAC ¶ 61. That is, "even if consumers chose not to click this box, Defendants still sent shoppers marketing emails." *Id.* ¶ 20 (cleaned up). This is deceptive. *See*, *e.g.*, *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. Apr. 23, 2024) ("Plaintiff plausibly alleges that Tenet's disclosure of Plaintiff's Private Information to third parties contradicted its express promises contained in its privacy policy and notice, and thus constituted an 'unfair or deceptive act.'"); *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012) ("Massachusetts courts have consistently held that 'conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.'") (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991)); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1001 (W.D. Wash. 2022) (sustaining claim for violation of Washington consumer

protective act where defendant used consumer data for purposes beyond those laid out in privacy policy, which the court found "had the capacity to deceive a substantial portion of the public").

Further, "because Massachusetts has folded the FTC Act into Chapter 93A, unfair or deceptive conduct that violates the FTC Act also violates Chapter 93A." *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 122 (1st Cir. 2014). And here, a company's failure to comply with its written promises on data usage is unfair or deceptive under the FTC Act. *See*, *e.g.*, *Federal Trade Commission v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1391 (M.D. Fla. 2018) (granting summary judgment in favor of FTC where "it is undisputed that Defendants' express claims that customers' information would remain private were material and false"); *Federal Trade Commission v. Toysmart.com, LLC*, 2000 WL 34016434, at *1 (D. Mass. July 21, 2000) ("The Complaint alleges that Toysmart engaged in deceptive acts or practices in violation of Section 5 of the Federal Trade Commission Act … by disclosing, selling or offering for sale personal customer information, contrary to the terms of its privacy policy that personal information would never be disclosed to third parties."); Kyle McKibbin, *Regulating Data Breaches: A Data Superfund Statute*, 23 VAND. J. ENT. & TECH. L. 649, 659 (2021) ("The most settled principle in the FTC privacy common law is that companies are bound by their privacy and data security promises under the 'deceptive' prong of Section 5.83 Examples of deceptive behavior include violating the terms of a posted privacy policy, mispresenting intended data use, and not providing notice of data practices."). Thus, Defendants' failure to abide by its purported limitations on data usage (*i.e.*, using e-mail addresses for marketing purposes regardless of whether consumers opt into the same) is deceptive under the FTC Act, and violates Chapter 93A by the same token.

Last, Plaintiff was injured by Defendants' deceptive conduct because "the Spam is a nuisance, Famous Footwear caused Plaintiff to waste her time reading or otherwise addressing the

Spam, and the Spam consumed valuable storage space in Plaintiff's email mailbox." FAC ¶ 35; *see also* ¶ 27 (the Spam acts as a nuisance by "causing irritation; acting as a distraction; displacing other, more important (and consented-to) emails; and creating visual clutter."); *Sagar v. Kelly Automotive Group, Inc.*, 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) ("[T]he receipt of unsolicited telemarketing text messages, on its own, is sufficient to establish a concrete injury in fact.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. To the extent the Court grants any aspect of Defendants' Motion, Plaintiff respectfully request leave to amend to cure any such deficiencies. Fed. R. Civ. P. 15(a)(2).

Dated: December 23, 2024

Respectfully submitted,

**SMITH KRIVOSHEY, P.C.**

By: */s/ Joel D. Smith*
Joel D. Smith

Joel D. Smith (BBO No. 712418)
867 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Max S. Roberts*
Kyle D. Gordon*
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com
kgordon@bursor.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*