**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARY CARR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BG RETAIL, LLC and CALERES, INC. ,<br><br>Defendants. | Case No. 1:24-cv-12387-AK |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Having already amended her complaint once, plaintiff still fails to state a claim under the Massachusetts Consumer Privacy in Commercial Transactions Act, General Laws chapter 93, section 105(a) (the "CPICTA") or the Massachusetts Unfair and Deceptive Business Practices Act, chapter 93A (the "UDBPA").

The entire basis of plaintiff's claims is that defendants BG Retail, LLC and Caleres, Inc. requested for plaintiff's email address in connection with an online purchase that resulted in marketing emails being sent to plaintiff's inbox. As the First Amended Class Action Complaint ("FAC") makes clear, plaintiff not only voluntarily provided her email address following a disclosure that expressly stated "[b]y entering your email, you agree to receive emails from [defendants]"—but the email was collected for shipping purposes. Indeed, how else would have plaintiff found out about when her product was shipped or delivered? According to plaintiff, defendants should have used snail mail or called her, because this somehow further promotes the protection of consumer privacy, notwithstanding the fact that her address and phone number are also personal identification information and allow for the same – or worse – abuse she alleges

about spam emails.

Regardless, plaintiff's opposition does nothing to rebut defendants' argument that: (1) the CPICTA does not apply to online purchases; (2) plaintiff's email address was requested for shipping purposes of an online purchase and was not requested in a credit card transaction form, as required under the CPICTA; and (3) defendants' use of plaintiff's email address is covered by an exception outlined in the CPICTA. In response, plaintiff cites to inapposite case law, heavily relying on *Tyler v. Michaels Stores, Inc.* ("*Tyler I*"), 840 F. Supp. 2d 438 (D. Mass. 2012) and *Tyler v. Michaels Stores, Inc.* ("*Tyler II*"), 464 Mass. 492 (2013) even though the cases did not even involve online transactions. Plaintiff also attempts to distinguish relevant cases under California's counterpart, the Song-Beverly Credit Card Act of 1974, Cal. Civil Code section 1747.08 ("Song-Beverly"). However, a fair reading of these cases, in conjunction with Song-Beverly case law, actually bolsters defendants' position that the CPICTA was intended to apply only to in-person credit card transactions, not online transactions.

But even so, plaintiff's CPICTA claim must be dismissed because defendants clearly fall within the exception that allows then to request information that is necessary for shipping. Mass. Gen. Laws ch. 93, § 105(a). Plaintiff's own screenshots demonstrate that such information is requested "For shipping confirmation." FAC at 7-8. Plaintiff's argument that an email address is not required for shipping (because defendants could have updated customers using an address and phone number) is not remotely convincing. There is no indication in § 105(a) that individual customers can dictate how companies choose to communicate with their customers regarding shipping. And, again, the other means of contacting customers also involve the use of personal identification information.

Plaintiff's UDBPA claim is equally flawed. Contrary to plaintiff's assertions, and

consistent with the case law she cites, defendants have not engaged in any unfair or deceptive conduct by sending plaintiff marketing emails. Plaintiff *voluntarily* provided her email address following an express disclosure that stated "[b]y entering your email, you agree to receive emails[.]"

Given these incurable deficiencies, the Court should dismiss plaintiff's FAC with prejudice.

## ARGUMENT

### I. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A CLAIM FOR VIOLATION OF THE CPICTA

#### A. CPICTA does not apply to online transactions which are intrinsically different from in-person transactions when considering the protection of consumer privacy.

First, plaintiff argues CPICTA is clear and unambiguous that it applies to online transactions because the statute provides: "The provisions of this section shall apply to all credit card transactions." Mass. Gen. Laws ch. 93, § 105(a). Defendants do not dispute that plaintiff engaged in a credit card transaction, but the type of credit card transaction the legislature was concerned with when it enacted CPICTA looks nothing like the online transaction at issue here. The text cited by plaintiff does nothing to answer the question of whether the legislature intended to cover *online* credit card transactions when such technology was not existent at the time. *See Vita v. New England Baptist*, 494 Mass. 824, 840 (2024) (holding that tracking of human-website interactions is not a "communication" under the Massachusetts Wiretap Act as "the Internet did not exist" and the legislative history did not contain any discussion of tracking and sharing of a

user's browsing or other activity).[1]

Indeed, to the extent that there are any clues in the text of the statute as to its application to online purchases of products that are to be delivered, the exception for providing personal identification information for purposes of delivery strongly militates against finding that the statute applies to such transactions, *because all online transactions require delivery*.

Plaintiff also heavily relies on *Tyler I*, 840 F. Supp. 2d 438 (D. Mass. 2012) and *Tyler II*, 464 Mass. 492 (2013)—even going so far as to claim that "*Tyler*" is on "all fours" with this case. This is simply incorrect. Neither case discussed, let alone referenced, online transactions. The decisions concerned *in store* electronic credit card transactions, as opposed to paper form credit card transactions. Importantly both types of transactions involved in store purchases at brick-and-mortar stores. In *Tyler I*, the court found that all credit card transactions were covered by the CPICTA, regardless of whether they were processed "manually, electronically, or by some other method" and referred to case law that supports this interpretation. 840 F. Supp. 2d at 445 (citing *Boivin v. Black*, 225 F.3d 36, 40 (1st Cir. 2000) and *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458 (Mass. 2009), both of which involve in-person point-of-sale transactions where the merchant electronically entered the customer's personal identifiable information into the company's software).

In *Tyler II*, the court found that the words "credit card transaction form" refer equally to an electronic or paper transaction form. 464 Mass. at 505 ("we interpret 'credit card transaction form' to apply to transactions involving both electronic and paper forms.") The court further reasoned that construing CPICTA as inapplicable to electronic credit card transactions would render the

[1] Plaintiff attempts to distinguish *Vita* by arguing that the term "communications" was ambiguous as to whether it applied to online interactions—but the same thing can be said here. The legislature could not possibly have intended CPICTA to apply to online credit card transactions, because e-commerce simply did not exist at the time.

statute "obsolete" where paper credit card transactions are "rapidly vanishing." *Id.* at 506. And this makes sense because the narrow interpretation posited by the defendant "would thus fail to carry out the statutory purpose of protecting consumer privacy" as merchants can "avoid the statute's prohibition against collecting personal identification information simply by using electronic means to capture and reflect any electronic credit card transaction." *Id.*

But this rationale cannot apply to online purchase transactions because online purchases necessarily require personal information to deliver the end product. As explained in the motion, online transactions and in-store transactions involve completely different considerations in protecting consumer privacy. And the purpose of the statute – to prohibit retailers from tricking customers into providing the personal information because they are led to believe it is necessary to obtain approval of the credit card – has no place in the online transaction where a product must be delivered. Independent of the validation of the credit card, an online transaction requires the customer to provide personal identification information, including a name and address. Prohibiting a retailer from collecting an email address would not serve any privacy-related purpose and would make life worse for customers, as the purpose of collecting emails for online transactions is to allow the merchant to update the buyer regarding the status of their purchase, such as delivery, pick-up, or shipping information.

Plaintiff's contention that an email address is unnecessary because merchants "could perfectly update consumers on their order with only their shipping address and phone number" is neither based in reality nor practical, nor does it prevent the disclosure of a customer's personal information. Dkt. No. 25 at 5. Consumers are unlikely to want to receive shipping information five business days later through the postal service or have to spend time speaking with a customer representative on a phone call for information regarding shipping. And, if plaintiff's theory were

accepted, then it could lead to a situation where retailers are open to liability based on post-hoc assertions by individual consumers about *which* of their personal information they believe was improperly required; *e.g.,* some other consumer could decide that they objected to their phone number being used for texting and that the retailer should have used their email address.

Given that the *Tyler* cases could not have acknowledged these distinctions for online transactions requiring delivery, much less addressed them, the passages plaintiff cites from them are irrelevant.

**B. Case law analyzing California's Counterpart the Song-Beverly Act is Instructive.**

California courts have consistently held that the Song-Beverly Credit Card Act, CPICTA's California counterpart, does not apply to online transactions. *See* Dkt. No. 23 at 5-6 (collecting cases). Surprisingly, despite relying on Song-Beverly in the FAC and arguing that, like Song-Beverly, an email address should constitute personal identification information under the CPICTA (FAC at ¶ 16), plaintiff now claims, that the "text, legislative history, and objectives all differ from those of the CPICTA." (Opp. at p. 10). This argument is disingenuous at best.

Plaintiff argues that Song-Beverly should not be afforded any weight because it is "clear" that the text of the statute did not apply to online transactions. Plaintiff argues that the definition of "credit card," which is "any card, plate, coupon book, or other single credit device existing for the purpose of being used from time to time upon presentation to obtain money, property, labor, or services on credit[,]" supports her position. Cal. Civ. Code § 1747.02(a). Plaintiff states that "presentation" means "the act of giving or showing something." From there, without any authority, plaintiff contends that the definition of "upon presentation" must mean "*physically* given or shown." Dkt. No. 10 (emphasis added). But even if true, it is far from clear that this means the credit card transaction cannot be an online transaction. To the contrary, one can

present something to anything, including presenting a credit card at the check-out process for an online transaction to complete a purchase. Indeed, this exact argument was raised and rejected in *Apple Inc. v. Superior Court*, 56 Cal. 4th 128, 137 (2013).

More importantly, despite plaintiff's bald assertion that the Song-Beverly and CPICTA differ in "legislative history, and objectives," the exact opposition is true. The legislative intent of both Song-Beverly and the CPICTA is the same: to safeguard consumer privacy and protect against the misuse of consumers' personal identification information. *See Tyler II*, 464 Mass. at 498, 503-04; *Pineda v. William-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 524 (2011) (noting Song-Beverly is "designed to promote consumer protection").

Plaintiff also argues that Song-Beverly is somehow different because Cal. Civ. Code § 1747.08(d) allows requesting for "reasonable forms of positive identification" while CPICTA does not. That and other differences[2] may be true, but they do not justify a conclusion that the purpose of the two statutes are different when construing their application to online transactions. Plaintiff string cites to several cases, but the cases simply highlight the differences between brick-and-mortar transactions and online transactions. *See* Dkt. No. 25 at 16. For example, plaintiff quotes *Mehrens v. Redbox Automated Retail LLC*, 2012 WL 77220, at *3 (C.D. Cal. Jan. 6, 2012) to say that "[i]n the context of a brick-and-mortar transaction, a customer's identity can be verified by having a salesperson examine the customer's driver's license or passport. … By contrast, collection of personal information in an online or unattended kiosk transaction may be the only means of verifying a customer's identity." This is true irrespective of Song-Beverly or CPICTA.

---

[2] In another regard, Song-Beverly is *more restrictive* than CPICTA, in that it prohibits "requesting or requiring" personal identification information as a condition of the credit card transaction, or even using a form that contains spaces for such information, Cal. Civ. Code § 1747.08(a)(1), (3), and CPICTA is limited to prohibiting the writing of such information on the credit card transaction form.

And this is exactly why CPICTA should not apply to online transactions—because there are significant differences between online and in-person transactions. Online transactions necessarily require additional information from the consumer that are not necessary for in-person transactions, such as verifying identity, shipping, delivery, and tracking information. There is nothing about CPICTA and Song-Beverly that would justify a different approach to their application to online transactions for the purpose of protecting consumer privacy.

### C. The CPICTA exception applies because defendants requested plaintiff's email for shipment and delivery purposes.

Even assuming that CPICTA were to apply to online transactions, which it does not, the law specifically allows a company to request for information necessary for the shipping or delivery of purchased merchandise, such as here. Mass. Gen. Laws ch. 93, § 105(a). In response, plaintiff argues that "an email address is not necessary for shipping or delivery; a phone number and shipping address are." *See* Dkt. No. 25 at 18-19. However, it is fundamentally unclear why plaintiff – or any other consumer – gets to decide what is necessary for shipping or delivery and not the company fulfilling the order. Of course, plaintiff offers no authority or even rationale for her argument.

As the FAC alleges, complete with screenshots, defendants use email addresses for "For shipping confirmation." FAC at 7-8. Plaintiff speculates that there are "additional means by which retailers can communicate with customers," such as "online shipment monitoring tools that merely require the entry of a tracking number." Dkt. No. 25 at 7. But the law does not leave it up to the customer to decide what is "necessary." Plaintiff's name and address are necessary for delivery, and they are clearly personal identification information covered by the statute. Plaintiff concedes that her phone number was appropriately requested by defendant. Plaintiff's interpretation would impermissibly have the court rewrite § 105(a) to add: For online purchases of merchandise that is

to be delivered, a merchant may write only the name, address, and phone number of the customer.

Clearly, the law does not say this. The allegations of the FAC clearly establish that plaintiff's transaction with defendants falls within the exception and plaintiff's CPICTA claim must be dismissed.

**D. Plaintiff did not enter her email address on a credit card transaction form.**

Plaintiff entered her email address in the shipping and delivery section of check-out, because her email address was necessary and intended for that purpose. It was not until after completing that section that plaintiff could go to the next page requesting billing information, including the credit card number, expiration date, card verification code, and the name of the shipment recipient. Unlike a receipt, which contains credit card information, the form in which the email address was requested was clearly not a credit card transaction form. And, unlike the cases cited in the opposition, there are no factual issues to be determined; plaintiff's FAC contains screenshots of the forms in which defendants request both (1) the customer's delivery information and email address and (2) the customer's credit card information. The application of undisputed facts found in the complaint to the law is a legal issue that a court can, and should, decide on a motion to dismiss. *Strahan v. Roughead*, 2010 WL 4827880 at *8 (D. Mass. Nov. 22, 2010) (finding a court should grant a motion to dismiss where the material facts at issue are not in dispute and the moving party is entitled to prevail as a matter of law).]

Because the factual allegations of the FAC do not support the conclusion that plaintiff entered her email address into a credit card transaction form, the allegation is not plausible and the FAC should be dismissed.

## II. PLAINTIFF HAS NOT PLAUSIBLE ALLEGED A CLAIM FOR VIOLATION OF THE UDBPA

Plaintiff fails to plausibly allege that defendants violated the UDBPA by sending

"marketing emails irrespective of consumers' choices." FAC at ¶ 61; Opp. at p. 15. As clearly outlined in both plaintiff's FAC and defendant's motion, the defendants never represented that consumers would not receive marketing emails merely by "clicking the box." FAC at ¶ 20; Motion at pp. 13-14.) The statement accompanying the email entry is straightforward: "By entering your email, you agree to receive emails from us about new products, exclusive offers, and updates. Please see our privacy policy to learn more about how we use your information." *Id.* Plaintiff entered her email and allegedly received marketing emails.

The case law cited by plaintiff in the opposition is inapplicable. *See* Opp. at pp. 15-16. In each case plaintiff references, the defendant's conduct was found to be unfair or deceptive because the defendant made an express promise that was later contradicted or disregarded, or the defendant used data for purposes beyond those disclosed to the consumer. *See Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. Apr. 23, 2024) ("Plaintiff plausibly alleges that Tenet's disclosure of Plaintiff's Private Information to third parties contradicted its express promises contained in its privacy policy and notice, and thus constituted an 'unfair or deceptive act.'"); *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012) ("Massachusetts courts have consistently held that 'conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.'"); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1001 (W.D. Wash. 2022) (sustaining claim for violation of Washington consumer protective act where defendant used consumer data for purposes beyond those laid out in privacy policy, which the court found "had the capacity to deceive a substantial portion of the public"). Neither of these circumstances is present here, and plaintiff cites to no case law holding that it is deceptive to engage in the very conduct that a defendant expressly states it will do, regardless of a checkbox.

Plaintiff further argues that defendants' conduct violates FTC regulations, which in turn constitutes a violation of the UDBPA. Opp. at pp. 16-17. However, again, the cases cited by plaintiff—where companies failed to honor their written promises regarding data usage—are equally inapplicable. *See Federal Trade Commission v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1391 (M.D. Fla. 2018); *Federal Trade Commission v. Toysmart.com, LLC*, 2000 WL 34016434, at *1 (D. Mass. July 21, 2000). Defendant fully complied with its written promises: it used the email for shipping purposes and sent marketing emails, which consumers consented to by providing their email addresses.

Accordingly, plaintiff's claim for violation of the UDBPA must be dismissed.

## III. CONCLUSION

For these reasons, defendants' request that the Court grant defendants' Motion to Dismiss and dismiss the FAC in its entirety with prejudice.

Dated: January 29, 2025

Respectfully submitted,
Defendants,
**BG RETAIL, LLC and CALERES, INC,**
By their attorneys,

/s/ Andrew Skroback
ANDREW SKROBACK (BBO #567863)

**NORTON ROSE FULBRIGHT US LLP**
ANDREW SKROBACK (BBO #567863)
1301 Avenue of the Americas,
New York, New York 10019-6022
Telephone: (212) 408-5540
Facsimile: (212) 318-3400
andrew.skroback@nortonrosefulbright.com

Dated: January 29, 2025

Respectfully submitted,
Defendants,
**BG RETAIL, LLC and CALERES, INC,**
By their attorneys,

/s/ Jeffrey B. Margulies
JEFFREY B. MARGULIES (CAB #126002)

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY B. MARGULIES (CAB #126002)
EVA YANG (CAB #306215)
ALEXANDRA M. PEREZ (CAB #350867)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com
alexandra.perez@nortonrosefulbright.com

***Admitted Pro Hac Vice***

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on January 29, 2025.

__*/s/ Jeffrey Margulies*__
Jeffrey Margulies